– For Publication –

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD L. WALKUP AND JEAN G. WALKUP,<br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>SANTANDER BANK, N.A. AND PHH MORTGAGE CORPORATION,<br>　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO. 15-3929 |

**OPINION**

Plaintiffs Richard L. Walkup and Jean G. Walkup here present a novel legal theory for recovery against the bank and mortgage sub-servicer that denied their repeated applications for a mortgage loan modification under the federal Home Affordable Modification Program ("HAMP").  They do not claim that they were improperly denied a modification.  Rather, they allege that Defendants Santander Bank, N.A. ("Santander") and PHH Mortgage Corporation ("PHH") knew that Plaintiffs would not qualify for a loan modification, but nonetheless engaged in deceptive conduct to encourage default on the loan so that Plaintiffs could submit multiple modification applications.  This caused Plaintiffs to incur late fees and increased interest fees, while Defendants allegedly received payments for processing the modification requests.  Arising from these factual allegations, Plaintiffs have brought claims for violations of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), as well as a breach of the covenant of good faith and fair dealing.  Defendants have moved to dismiss all of Plaintiffs' claims pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Because the facts alleged in the Amended Complaint do not plausibly support Plaintiffs' claims, Defendants' motion to dismiss shall be granted.

## I.   BACKGROUND

In May 2005, First Financial Bank ("First Financial") provided Plaintiffs with a loan in the amount of $730,000 secured by a mortgage on their residence in West Chester, Pennsylvania.  Am. Compl. Ex. A.  Later that year, First Financial assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS").  *Id.*  Plaintiffs later defaulted on their mortgage.[1]  After that default, MERS—on March 7, 2013—assigned the mortgage to Sovereign Bank, N.A. ("Sovereign").  Am. Compl. ¶ 12; Defs.' Mot. at 4.  Sovereign filed a foreclosure action against Plaintiffs on April 11, 2013.  Am. Compl. ¶ 13.  No further assignment has occurred, but Sovereign merged with Santander[2] and Santander is now master servicer of the mortgage loan.  *Id.* ¶ 4.  Defendant PHH was the sub-servicer at all relevant times.  *Id.* ¶ 5.[3]

Plaintiffs' claim that they foresaw trouble paying "the mortgage with Santander" in 2013 and sought to "get ahead of the problem" by reaching out to PHH to explore loan modification.  Am. Compl. ¶¶ 18-19.  PHH indicated that Defendants could not offer modification unless Plaintiffs were actually behind in their mortgage payments.  *Id.* ¶ 20.  Plaintiffs assert that,

---

[1] The Amended Complaint does not indicate the precise date on which default occurred.  Defendants have attached to their motion a copy of a state court pleading in which a more specific date of default is alleged and have urged the court to take judicial notice of this date.  *See* Defs.' Mot. Ex. D at ¶ 8.  However, while the Court may take judicial notice of prior court proceedings, it is not proper to take judicial notice of "the truth of facts averred in those proceedings."  *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999).  Plaintiffs included a specific default date in their brief in opposition to Defendants' motion to dismiss, but factual assertions in a brief cannot be considered in deciding a motion to dismiss.  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997).

[2] Plaintiffs assert that the loan was assigned "from MERS to defendant Santander" on March 7, 2013.  Am. Compl. ¶ 12.  This reference to "Santander" appears to be a shorthand reference to both Sovereign (pre-merger) and Santander (post-merger) because the Assignment of Mortgage / Deed of Trust that Plaintiffs cited and attached to the Amended Complaint memorializes an assignment to Sovereign on March 7, 2013.  Am. Compl. Ex. B.

[3] Although the Amended Complaint asserts only that PHH was sub-servicer under Santander, the 2005 Assignment of Deed attached to the Amended Complaint indicates that PHH was involved in servicing the mortgage when it was transferred from First Financial to MERS in 2005.  Am. Compl. Ex. A.

2

"[a]cting on this advice," they refrained from making payments, submitted at least four loan modification applications and, at Defendants' request, did not make payments so as to remain eligible for a modification over a course of "years." *Id.* ¶¶ 21 & 27. Plaintiffs also contend that Defendants falsely stated that Plaintiffs had failed to submit necessary paperwork on multiple occasions, causing Plaintiffs to expend time and resources filing duplicative paperwork. *Id.* ¶ 24. As a separate basis for their FCEUA claim, Plaintiffs allege that PHH consistently made direct contact with Plaintiffs after the loan was in default even though PHH was aware that Plaintiffs were represented by counsel in the matter. *Id.* ¶ 32.

Plaintiffs filed a three-count Complaint in the Pennsylvania Court of Common Pleas for Chester County on May 15, 2015 asserting claims for: (1) a violation of the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. § 2270.1 *et seq.*; (2) a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et seq.*; and (3) a breach of the covenant of good faith and fair dealing. Notice of Removal ¶ 1 & Ex. 1. The case was removed to this Court pursuant to 28 U.S.C. §§ 1332(a)(1) & 1441. *Id.* Defendants moved to dismiss the initial Complaint on July 22, 2015. Rather than respond to the initial motion to dismiss, Plaintiffs filed an Amended Complaint on August 27, 2015, asserting the same three claims that appeared in the original Complaint.[4] Defendants have now moved to dismiss all claims in the Amended Complaint.

---

[4] The Amended Complaint was filed the day after the deadline to respond to Defendants' original Rule 12(b)(6) motion and more than 21 days after service of the original Complaint. Thus, Plaintiffs missed the deadline for amending a pleading as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). Plaintiffs did not seek leave to amend their Complaint as required by Rule 15(a)(2). However, Defendants have not demonstrated any prejudice from Plaintiffs' failure to seek leave to amend or timely respond to the original motion to dismiss. Since leave to amend a complaint under Rule 15(a)(2) shall be granted freely "when justice so requires," the Court will consider the Amended Complaint to be the operative statement of Plaintiffs' claims and will evaluate Defendants' motion to dismiss in light of the legal claims and factual allegations in the Amended Complaint.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In light of *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed] conduct." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (internal quotation marks omitted).

## III.   DISCUSSION

Plaintiffs' claims are based upon two distinct courses of conduct. First, Plaintiffs allege in support of all three counts in the Amended Complaint that Defendants induced them to default on their loan and remain in default through deceptive practices, in violation of: (1) several provisions of the FCEUA prohibiting certain debt collection practices, 73 Pa. Stat. § 2270.4(b)(5)(ii), (v), (ix), (x), & (xii); (2) the catch-all provision of the UTPCPL prohibiting deceptive conduct, 73 Pa. Stat. § 201-2(4)(xxi);[5] and (3) the covenant of good faith and fair dealing. Second, Plaintiffs allege as another basis for their FCEUA claim that Defendants directly contacted Plaintiffs while the loan was in default, despite knowing that Plaintiffs were represented by counsel in the foreclosure proceeding, in violation of the specific provisions of the FCEUA which prohibit creditors from directly contacting consumers who are represented by counsel. 73 Pa. Stat. § 2270.4(b)(1)(vi) & (b)(2)(ii).

---

[5] Defendants argue that Plaintiff Jean G. Walkup ("Mrs. Walkup") lacks standing to make UTPCPL claims because she was not included on the Note memorializing the original loan. Given that both mortgage deeds attached to the Amended Complaint list "Jean G. Walkup" as a mortgagor along with Richard L. Walkup, Am. Compl. Exs. A & B, Plaintiffs having adequately pled that Mrs. Walkup obtained mortgage services from Defendants the argument has no merit.

### A. HAMP

Plaintiffs' Amended Complaint refers to the Home Ownership Modification Program ("HAMP"), Am. Compl. ¶ 67 ("Defendants . . . failed to inform the Defendants (sic) that they had no intention of modifying the mortgage and did not intend to honor their obligations under [HAMP]"), which is a federal program created pursuant to the Emergency Economic Stabilization Act of 2008 to aid homeowners in preventing foreclosure through loan modification. *See* 12 U.S.C. § 5219(a). The parties agree that "HAMP does not provide a private right of action." *Sinclair v. Citi Mortg. Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013) (not precedential) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4 (7th Cir. 2012)). And, in fact, Plaintiffs' Amended Complaint does not include a claim labelled as a violation of HAMP nor make any claim that they are entitled to a loan modification. Am. Compl. ¶ 15 ("Plaintiffs do not contend that they are entitled to a mortgage modification."). Nevertheless, Defendants argue that Plaintiffs' claims should be dismissed because they "improperly seek to enforce HAMP, or otherwise claim that they are entitled to a loan modification." Defs.' Mot. at 8. They argue that Plaintiffs' claims are "thinly-veiled attempts to assert a private cause of action under HAMP itself[,]" that they are "derivative of a HAMP claim," that Plaintiffs are "precluded from raising any claims predicated on HAMP," and that, accordingly, "their claims necessarily fail." *Id.* at 9-10.

Accepting on its face Plaintiffs' express disclaimer in its briefing that it is not pursuing a HAMP theory of liability particularly in view of the fact that no such claim is included in its Amended Complaint, the question is whether, assuming that Defendants are right that Plaintiffs' claims are a HAMP violation dressed in the clothing of other claims—the UTPCPL, the FCEUA,

5

and the breach of the implied covenant of good faith and fair dealing—does HAMP preempt those claims?

The doctrine of federal preemption is rooted in the constitutional principle that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Cont. art. VI, cl.2. The Supreme Court and Third Circuit have recognized three forms of preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Farina v. Nokia, Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citing *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Express preemption occurs when Congress, "through a statute's express language, declares its intent to displace state law." *Id.* Field preemption applies where "'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (quoting *Hillsborough Cnty.*, 471 U.S. at 713). Conflict preemption applies "when it is impossible to comply with both federal and state law . . . either where compliance with both laws is impossible or where state law erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Zahner v. Sec'y Pa. Dep't of Human Servs.*, 802 F.3d 497, 512 (3d Cir. 2015) (internal quotation marks omitted).

Here, despite arguing that Plaintiffs' claims "necessarily fail" because they are "precluded from raising any claims predicated on HAMP," Defendants do not explain how the lack of a private cause of action under the HAMP program preempts state consumer protection and contract law. Specifically, Defendants do not argue that the statute or regulations governing HAMP expressly displace state law, that the federal interest in mortgage modification is so dominant as to preempt the entire field and preclude enforcement of state laws, or that state-law prohibitions on deceptive or bad-faith conduct conflict with or create an obstacle to the

implementation of HAMP. Rather, they point to several cases that merely reiterate the fact that HAMP does not grant an actionable entitlement to loan modification.[6] The only case in Defendants' list of authorities that concerns a claim which did not depend on an entitlement in HAMP is an unreported report and recommendation in which the magistrate judge "disagree[d] with Plaintiffs that their cause of action [wa]s independent of HAMP," but also noted that, "[i]n any event, the record does not support Plaintiffs' claims regarding the existence of a forbearance agreement, nor does it suggest that foreclosure proceedings commenced while the loan modification application was pending." *Hemenway v. Wells Fargo, N.A,* No. 3:11-cv-283, 2012 WL 512398, at *5 (D. Or. Jan. 9, 2012), *adopted without objection,* No. 3:11-cv-283, 2012 WL 512213 (D. Or. Feb. 15, 2012). In that case, the plaintiffs alleged that Wells Fargo had made an oral promise not to foreclose while a loan modification request was being processed. *Id.* at *5. Though the court found that "any alleged offer by Wells Fargo to forebear and/or modify came about and was made wholly under the rubric of HAMP," this finding was overshadowed by the

---

[6] *See Sinclair v. Citi Mortg. Inc.*, 519 F. App'x at 739 (not precedential) ("HAMP does not provide a private right of action.") (citing *Wigod* , 673 F.3d at 559 n.4); *Miller v. Chase Home Finance*, 677 F.3d 1113, 1117 (11th Cir. 2012) (holding that HAMP does not create a private right of action and affirming dismissal of good faith and fair dealing claim because it was not viable under Georgia law); *Slimm v. Bank of Am.*, No. 12-cv-5846, 2013 WL 1867035, at *11 (D.N.J. May 2, 2013) (dismissing claim based on mortgagee's alleged promise to "make a fair and honest" review of a loan modification request because there was no representation concerning actual modification and HAMP does not create an entitlement to modification); *Keosseian v. Bank of Am.*, No. 11-cv-3478, 2012 WL 458470, *2 n.3 (D.N.J. Feb. 10, 2012) ("[A]ll of Plaintiffs' claims are premised on Defendant's denial of their loan modification request and alleged failure to comply with its obligations under HAMP and the SPA."); *Bourdelais v. J.P. Morgan Chase*, No. 3:10-cv-670, 2011 WL 1306311, at *4 (E.D. Va. Apr. 1, 2011) ("Plaintiff cannot rely on HAMP to define the scope of her modification rights while at the same time professing that her action persists without any reference to HAMP.") (internal quotation marks omitted); *Ishler v. Chase Home Finance, LLC*, No. 1:CV-10-2117, 2011 WL 744538, at *6-7 (M.D. Pa. Feb. 23, 2011) (dismissing HAMP-related fraud claims because Plaintiff failed to plead with particularity, demonstrate reasonable reliance, or show that defendants' conduct constituted a misrepresentation as required to meet the elements of common law fraud in Pennsylvania); *Simon v. Bank of Am.*, No. 10-cv-300, 2010 WL 2609436, at *5, 9-11 (D. Nev. June 23, 2010) (rejecting a wrongful foreclosure claim that was predicated on plaintiff's claim of entitlement to loan modification under HAMP); *Williams v. Geithner*, No. 09-cv-1959, 2009 WL 3757380, at * 7 (D. Minn. Nov. 9, 2009) ("Having found no constitutionally protected property interest in loan modifications, Plaintiffs are unable to show any likelihood of success on the merits of their due process claim."); *JP Morgan Chase Bank, N.A. v. Ilardo*, 36 Misc. 3d 359, 373-77 (N.Y. Sup. Ct. 2012) (holding that HAMP does not create an entitlement to modification and dismissing all state claims after considering each claims' merit under New York law); *HSBC Bank, NA v. Donaghy*, 101 A.3d 129, 136 (Pa. Super. Ct. 2014) (rejecting a mortgagee's noncompliance with HAMP as a defense to a foreclosure proceeding).

undisputed fact that the foreclosure did not occur while the modification was being processed, and thus the claim lacked factual support. *Id*. Furthermore, the court did not engage in a preemption analysis. Thus, *Hemenway* cannot stand for the proposition that HAMP preempts state contract and consumer protection law.

Defendants' arguments that Plaintiffs' state law claims must fail because they are "thinly-veiled attempts to assert a private cause of action under HAMP" and are "clearly derivative of a HAMP claim, Defs. Brf. at 9, is simply not supported by the authorities they cite or otherwise. As the Seventh Circuit has noted, "HAMP and its enabling statute do not contain a federal right of action, but neither do they preempt otherwise viable state-law claims." *Wigod*, 673 F.3d at 556; *see also Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 809 (E.D. Pa. 2014) ("This 'back door' or 'end-run' theory is 'built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either.'") (quoting *Wigod*, 673 F.3d at 581); *Cave v. Saxon Mortg. Servs., Inc.* No. 11-cv-4586, 2012 WL 1957588, at *4 n.5 (E.D. Pa. May 30, 2012) ("We decline to dismiss Plaintiffs' state law claims solely because HAMP contained no private cause of action.") (citing *Wigod*, 673 F.3d at 581-82).

In response to Defendants' HAMP preclusion argument, Plaintiffs simply reiterate that they are not claiming an entitlement to loan modification. Plaintiffs' response is compelling. Based on the explicit lack of claim to an entitlement to loan modification in the Amended Complaint—which the Court must accept at this stage—Defendants' attempt to support a HAMP "preclusion" argument falls short. Since Plaintiffs have expressly disclaimed reliance on HAMP as the source of their legal claims, the Court must consider whether those claims—as presented

in the Amended Complaint, and viewing all facts in the light most favorable to Plaintiffs—have stated a viable basis for relief under Pennsylvania law.

### B. *Counts I and II (FCEUA and UTPCPL Claims)*

Turning now to Plaintiffs' statutory claims under the FCEUA and the UTPCPL, they are analyzed, at least as an initial matter, together: "Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use 73 Pa. Stat. § 201-9.2, the remedial provision of the UTPCPL, to obtain relief." *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 359 (E.D. Pa. 2013); *see* FCEUA, 73 Pa. Stat. § 2270.5(a) ("If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of [the UTPCPL.]").

The remedial provision of the UTPCPL provides for a private right of action arising from violations of the statute only when a customer "suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person" of acts and practices prohibited by the UTPCPL. 73 Pa. Stat. § 201-9.2. The Pennsylvania Supreme Court has found that the UTPCPL "clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result of* the defendant's prohibited action." *Weinberg v. Sun Co., Inc.* 777 A.2d 442, 446 (Pa. 2001). Furthermore, a plaintiff's loss-causing reliance on the prohibited conduct must be justifiable for such conduct to give rise to a UTPCPL claim. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). In sum, to sustain a claim under the UTPCPL, a private plaintiff must: (1) allege ascertainable loss by "point[ing] to money or property that he would have had but for the defendant's fraudulent actions," *Benner*, 917 F. Supp. 2d at 360; and, (2) plead facts to support the conclusion that reliance on the defendant's actions was justifiable.

### 1. Ascertainable Loss

Plaintiffs' alleged injuries consist of: (a) late charges and increased interest on their mortgage; (b) shame and embarrassment; (c) improperly charged late fees on their mortgage; (d) emotional distress and its physical manifestations; and (e) damage to their credit scores. Am. Compl. ¶ 62. Shame, embarrassment, and emotional distress are personal injuries and are thus not cognizable under the UTPCPL. While damage to a credit score could potentially lead to an ascertainable loss of money or property, damage to the credit score itself is a reputational injury that does not constitute a "loss of money or property." *See Allen v. Wells Fargo, N.A.*, No. 14-cv-5283, 2015 WL 5137953, at *9 (E.D. Pa. Aug. 27, 2015) (noting that a plaintiff failed to claim ascertainable loss when he "fail[ed] to specify the alleged damages stemming from the negative credit report beyond merely stating that it was negatively affected"); *see also Benner*, 917 F. Supp. 2d at 360 & n.16 (finding that an unpaid liability was not an "ascertainable loss" under the UTPCPL because the plaintiff could not identify an actual loss of money or property as a result of the liability). Thus, the only injuries alleged by Plaintiffs that would be cognizable as "loss of money or property" under the UTPCPL are the late fees/charges and increased interest on their mortgage loan. These losses could serve as the basis for a private claim under the UTPCPL only if they occurred as a result of justifiable reliance on Defendants' alleged violations of the FCEUA or the UTPCPL.

### 2. Justifiable Reliance

To determine whether Plaintiffs have adequately pled justifiable reliance on Defendants' alleged conduct at the motion to dismiss stage requires a two-step analysis. First, the Court must extract all factual assertions from the Amended Complaint, viewing such facts in the light most favorable to the Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor. *See Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In addition to the Amended Complaint, the Court may consider documents that are "integral to or explicitly relied upon in the complaint" regardless of whether such documents are explicitly cited in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Once the factual components of the claims in the Amended Complaint have been viewed in the light most favorable to the Plaintiffs, the Court must assess whether these factual allegations, if true, provide plausible support for a legal claim for relief. *Fowler*, 587 F.3d at 211.

### a. Improper Communication FCEUA Claim

Plaintiffs have alleged violations of two provisions of the FCEUA that prohibit creditors acting as debt collectors from directly contacting consumers who are represented by counsel. *See* 73 Pa. Stat. § 2270.4(b)(1)(vi) & (b)(2)(ii). Since violations of these provisions can only give rise to a private action if a plaintiff can demonstrate standing for a private action under the UTPCPL, Plaintiffs must connect the alleged FCEUA-prohibited communication with their own decision to remain in default for longer than they would have done so had Defendants communicated with Plaintiffs through Plaintiffs' attorney.

There is no basis for concluding that the alleged FCEUA-prohibited communications caused or prolonged Plaintiffs' default. The Amended Complaint does not contain specific allegations that Plaintiffs relied on these communications in deciding to remain in default on the loan. Quite the opposite, Plaintiffs characterize these communications as efforts by Defendants acting as debt collectors "to harass, oppress, or abuse" Plaintiffs. Am. Compl. ¶ 57. While the Court must draw all reasonable inferences in favor of the Plaintiffs, it would not be reasonable to infer that these harassing, oppressive, and abusive communications were the communications on which Plaintiffs relied in deciding to default on their loan. Even if such a factual inference were

reasonable, it would not be justifiable for Plaintiffs to have chosen to remain in default in reliance on harassing communications from the entity that was attempting to collect on the defaulted loan. Thus, the factual allegations concerning direct communication from Defendants while Plaintiffs were represented by counsel do not plausibly support a claim for relief, even if such communications violated the FCEUA.[7]

### b. Deceptive Conduct Claims

Plaintiffs have made deceptive conduct claims under both the FCEUA and the UTPCPL. Their FCEUA claim alleges violations of five specific provisions that prohibit various forms of deceptive conduct on the part of creditors attempting to collect a debt. *See* 73 Pa. Stat. § 2270.4(b)(5)(ii), (v), (ix), (x), & (xii). Their UTPCPL claim rests on the UTPCPL's "catch-all" prohibition of fraudulent or deceptive conduct in the practice of trade or commerce. *See* 73 Pa. Stat. § 201-2(4)(xxi).

Defendants argue that Plaintiffs must support their UTPCPL deceptive conduct claim by pleading the elements of common law fraud, and must do so with the particularity required for pleading fraud claims under Federal Rule of Civil Procedure 9(b). This would be correct under the version of the UTPCPL in effect prior to 1996. *See Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 45-46 & n.20 (Pa. 2007) (finding that the pre-1996 version of the fraud-based provision in the UTPCPL required proof of the elements of common law fraud). However, the "catch-all" provision of the UTPCPL was amended in 1996 to add a prohibition on "deceptive" conduct to the prior version which banned only "fraudulent" conduct. *Id.* at 46 n.20 (noting that the claim at

---

[7] Defendants have also argued that they were not engaged in debt collection activities, and thus were not subject to the FCEUA. Because these communications could not have caused ascertainable loss for UTPCPL purposes, the Court need not decide whether, in fact, defendants actions fell within the statutory definition of debt collection activities.

issue arose before the 1996 amendment, and thus the amendment was not considered). The Pennsylvania Supreme Court has not addressed the effect of this change.

In evaluating state law in the absence of controlling authority from a state's highest court, "decisions of state intermediate appellate courts should be accorded significant weight." *Allstate Property and Casualty Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012). The Third Circuit has declined to predict what the Pennsylvania Supreme Court will do in light of "some disagreement in the Pennsylvania courts, and in district courts in this circuit" about the effect of the 1996 amendments. *Kemezis v. Matthews*, 394 F. App'x 956, 958 (3d Cir. 2010).[8] However, the disagreement among Pennsylvania courts noted by the Third Circuit in *Kemezis* was resolved in 2012 when the Superior Court adopted the interpretation already endorsed by the Commonwealth Court that the 1996 amendment added an alternative route to recovery under the catch-all provision which does not require proving the elements of common law fraud. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 155-56 (Pa. Super. Ct. 2012); *see Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. Ct. 2003) (holding that elements of common law fraud are not required to plead "deceptive conduct" under post-1996 catch-all provision in the UTPCPL).

There is no indication that the Pennsylvania Supreme Court would deviate from the straightforward interpretation of the 1996 amendment adopted by the Superior Court and the Commonwealth Court. Indeed, the intermediate appellate courts' interpretation is the only reading that is consistent with the plain language of the UTPCPL. Prior to 1996, the catch-all

---

[8] Defendants urge the Court to consider the Third Circuit's observation in *Hunt v. U.S. Tobacco Co.* that the 1996 amendment did not remove the UTPCPL's reasonable reliance requirement. *See* 538 F.3d 217, 225 n.15 (3d Cir. 2008). However, this conclusion from *Hunt* has no bearing on the interpretation of the catch-all provision. The issue before the court in *Hunt* was whether reasonable reliance remained an overall standing requirement of the UTPCPL after the 1996 amendment. *Id.* at 225. The Third Circuit held that the 1996 amendment had no impact on this issue, because "the justifiable-reliance requirement on which we base our decision emanates not from the catch-all provision that the legislature amended in 1996, but rather from the private-plaintiff standing provision." *Id.* at 225. Thus, *Hunt* does not offer guidance for interpreting the catch-all provision.

provision prohibited "[e]ngaging in any other *fraudulent* conduct which creates a likelihood of confusion or of misunderstanding." *Prime Meats, Inc. v. Yochim*, 619 A.2d 769, 773 (Pa. Super. Ct. 1993) (quoting 73 Pa. Stat. § 201-2(4)(xvii) (1993)). In 1996, the catch-all provision was amended to its current form, which prohibits "[e]ngaging in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding." Act of Dec. 4, 1996, 1996 Pa. Laws 906, *codified at* 73 Pa. Stat. § 201-2(4)(xxi) (emphasis in the Act). It is a basic principle of statutory interpretation in Pennsylvania that "[b]ecause the legislature is presumed to have intended to avoid mere surplusage, every word, sentence, and provision of a statute must be given effect." *Allegheny Cnty. Sportsmen's League v. Rendell*, 860 A.2d 10, 19 (Pa. 2004). Furthermore, '[w]here words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction." *CSC Enters., Inc. v. State Police, Bureau of Liquor Control Enforcement*, 782 A.2d 57, 63 (Pa. Commw. Ct. 2001). With these principles in mind, the Court predicts that the Pennsylvania Supreme Court would follow the intermediate appellate courts' interpretation that the 1996 amendment to the UTPCPL expanded liability to include "deceptive conduct," which does not rise to the level of fraud. Thus, Plaintiffs need not plead the elements of common law fraud to state a claim under the catch-all provision of the UTPCPL.

Since the Plaintiffs need not plead the elements of fraud, they also need not plead with the particularity required by Rule 9(b) for allegations of "fraud or mistake." *See Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 463 (E.D. Pa. 2013) ("Because a plaintiff need not plead fraud under the UTPCPL, a plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b).") (internal quotation marks omitted). Accordingly, the Court will apply the general

plausibility pleading standard set forth in *Twombly* and *Iqbal* to all of Plaintiffs' deceptive conduct claims, whether alleged under the FCEUA or the catch-all provision of the UTPCPL.

The pleading standard set forth in *Twombly* and *Iqbal* requires that all claims be supported with enough factual specificity to demonstrate a plausibility of success. Most of the allegations in the Amended Complaint consist of conclusory assertions regarding generalized misrepresentation or deceptive conduct. However, three specific factual allegations can be discerned: First, Plaintiffs claim that they initially defaulted after they approached PHH in 2013 to proactively address a possible inability to make their monthly payments and "PHH informed plaintiffs that they could not offer any modification unless plaintiffs were actually behind in their mortgage payments." Am. Compl. ¶¶ 18-21.[9] Second, Plaintiffs received a "request that plaintiff s [sic] not make mortgage payments so as to remain eligible for a modification." *Id.* ¶ 27. This request occurred during "years of modification submissions," including "at least four different modification applications." *Id.* ¶¶ 22, 27. Third, Plaintiffs allege that Defendants continually requested duplicative submission of "required" information for the purpose of processing loan modification applications. *Id.* ¶ 23.

These allegations are inconsistent with Plaintiffs' basic mortgage history, as set forth in the Amended Complaint. Plaintiffs allege that the initial default took place in 2013, and that Defendants filed a foreclosure action on April 11, 2013. Am. Compl. ¶¶ 18-21, 28. Thus, while Plaintiffs allege that they sought modification advice, learned that a default was required as a prerequisite for HAMP modification, stopped paying on the loan, and engaged in four modification requests over a period of "years," the Amended Complaint clearly asserts that this

---

[9] In their Opposition to Defendants' motion to dismiss, Plaintiffs assert that they first defaulted in July 2012, likely because Defendants pointed out in their motion that the default actually occurred in 2012. Pls.' Opp. at 2. This contradicts the claim in the Amended Complaint that Plaintiffs first defaulted after discussing modification with PHH in 2013. However, Plaintiffs did not seek to amend their pleading, so the facts as alleged in the Amended Complaint remain the operative allegations at this stage.

chain of events began in 2013, and it necessarily ended with the foreclosure action on April 11 of that year, a time period spanning, at most, three and a half <u>months</u>. Even considering the revised argument in Plaintiffs' brief that the default actually occurred in July 2012 (and, presumably, that PHH's initial statement concerning HAMP eligibility was also made in 2012), Plaintiffs would only be left with nine months to have engaged in "years" of modification requests. Thus, even if the Court were to allow further amendment of the Amended Complaint to change the alleged date of the initial discussion with PHH to 2012, Plaintiffs have not articulated a factually plausible account of their extensive reliance on Defendants' conduct. On that basis alone, Plaintiffs' FCEUA and UTPCPL claims must be dismissed.

  Even if Plaintiffs' account were factually plausible, it does not provide support for a claim of justifiable reliance on Defendants' conduct. The initial "advice" upon which Plaintiffs claim they relied in refraining from making loan payments was PHH's true statement that default is a threshold requirement to apply for modification. There is no allegation in the Amended Complaint that PHH told Plaintiffs they would receive a modification if they defaulted or even that a modification was likely. All Plaintiffs have alleged is that PHH told them—accurately— that they could not be considered for HAMP modification while their loan payments were current. This allegation does not demonstrate justifiable reliance for two reasons. First, the statement included no encouragement to actually default. Second, to the extent that Plaintiffs relied on this statement to stop making loan payments despite knowledge of the consequences of default in their loan agreement, such reliance was not justifiable. Furthermore, even if Plaintiffs considered this statement in deciding to default, a factual response about HAMP eligibility in response to Plaintiffs' loan modification inquiry is not deceptive.

Other than PHH's factual statement about HAMP eligibility requirements, the other factual support in the Amended Complaint concerning Defendants' alleged deceptive conduct consists of two "requests" made by Defendants after Plaintiffs had already defaulted. First, they claim that Defendants made a "request that plaintiff s [sic] not make mortgage payments so as to remain eligible for a modification." Am. Compl. ¶ 27. Second, Plaintiffs allege that Defendants repeatedly requested additional copies of information required for loan modification applications after falsely claiming that the information was missing from original submissions. *Id.* ¶¶ 23-25. Again, there is no allegation that Defendants promised modification, or even indicated that a modification was likely if Plaintiffs remained in default. Furthermore, Plaintiffs signed a Note establishing a clear obligation to pay $4,494.74 to Santander each month, with specific consequences for missing such payment, including the assessment of late fees and the acceleration of debt upon default. Defs. Mot. Ex. A ¶¶ 3(B) & 6.[10] Mere information about threshold requirements for a HAMP application, a "request" to continue making such applications, and mishandling of application paperwork (even if in bad faith) does not provide Plaintiffs with a justifiable reason to believe that the clear consequences of default—which constitute Plaintiffs' only ascertainable loss—would be excused.

In sum, even if the Court were able to overlook the serious factual contradictions in the Amended Complaint to extract a plausible factual narrative, Plaintiffs have failed to assert facts that, if true, would demonstrate justifiable reliance on Defendants' conduct that resulted in

---

[10] Although the Note was not attached to or explicitly cited in the Amended Complaint, it establishes Plaintiffs' loan obligations and is thus integral to the claims in the Amended Complaint and may therefore be considered in deciding a motion to dismiss. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

ascertainable loss. Thus, Defendants' motion to dismiss Plaintiffs' FCEUA and UTPCPL claims shall be granted.[11]

### C. *Count III (Breach of Implied Covenant of Good Faith and Fair Dealing)*

Plaintiffs have alleged a "breach of the implied covenant of good faith and fair dealing," on the theory that Defendants owed them a duty of good faith "by contract and common law." Am. Compl. ¶ 79. While courts and scholars have noted, "Pennsylvania law has been riven with 'considerable confusion as to the nature of the covenant of good faith, when that covenant is implicated, and how claims arising from a breach of the covenant are enforced.'" *McHolme/Waynesburg, LLC v. Wal-Mart Real Estate Business Trust*, No. 08-cv-961, 2009 WL 1292808, at *2 (W.D. Pa. May 7, 2009) (quoting Seth William Goren, *Looking for the Law in all the Wrong Places: Problems in Applying the Implied Covenant of Good Faith Performance*, 37 U.S.F. L. Rev. 257, 258 (2003)), to the extent that Plaintiffs' claim is based on a tort theory, it must fail because, in Pennsylvania, "'[w]here a duty of good faith arises, it arises under the law of contracts, not under the law of torts.'" *Burton v. Teleflex*, 707 F.3d 417, 432 (3d Cir. 2013) (quoting *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002)) (internal quotation marks from *Heritage* omitted in *Burton*). Thus, a claim for a breach of the implied covenant of good faith and fair dealing is, in its essence, a breach of contract claim. *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008). Under Pennsylvania law, a breach of contract claim requires pleading "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.

---

[11] Defendants also argue that Plaintiffs' FCEUA and UTPCPL claims should be dismissed based on the economic loss doctrine and the gist of the action doctrine. Because the Court finds that the Plaintiffs have failed to sufficiently plead their FCEUA and UTPCPL claims, it is not necessary to address these additional grounds for dismissal put forward by Defendants.

Super Ct. 1999).  Thus, Plaintiffs' claim for relief under Count III must set forth (1) the existence of a contract with Defendants, (2) a breach of the duties imposed by the covenant of good faith and fair dealing implied in that contract, and (3) damages arising from the breach of the contractual duties.

Plaintiffs have established that they entered into a mortgage loan agreement with First Financial in 2005, and that Defendants are the successors to First Financial with respect to that agreement.  Defendants do not dispute this contractual relationship.[12]  Defs. Mot. at 4, Ex. A & B.  There is no need to analyze whether the contract here implied a covenant of good faith and fair dealing or whether any such covenant was breached because the allegations of the Amended Complaint do not include a viable theory of damages.  Damages for breach of contract are available only when such damages (1) "were such as would naturally and ordinarily result from the breach" or (2) "were reasonably foreseeable and within the contemplation of the parties at the time they made the contract" and (3) "can be proved with reasonable certainty."  *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 662 (Pa. 2009).  Damages for emotional distress are not normally available unless the plaintiff alleges – as they have not here – physical injury or impact.  *Rittenhouse Regency Affiliates v. Passen*, 482 A.2d 1042, 1043 (Pa. Super. Ct. 1984); *see also Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000).

Given that the Amended Complaint's allegations include nothing to suggest that the contract contained provisions or that the Defendants made any statements that would naturally or reasonably lead Plaintiffs to believe that the clear default provisions of their mortgage loan would not be enforced if they ceased making payments, it cannot be read plausibly to conclude that it was reasonably foreseeable to Defendants at the time they made the contract that Plaintiffs

---

[12] Defendants limit their argument concerning Mrs. Walkup's lack of standing to the UTPCPL claim.

would deliberately default on their obligations thereby incurring late fees and charges or a higher mortgage rate.  Furthermore, Plaintiffs' alleged emotional distress, shame, and embarrassment are not cognizable as damages in a breach of contract case without physical injury.  This failure to plausibly plead contract damages requires dismissal of Plaintiffs' claim for a breach of the implied covenant of good faith and fair dealing.

## IV.     CONCLUSION

The Amended Complaint fails to set forth sufficient factual foundation to support the basic elements of claims under the FCEUA, the UTPCPL, or the implied covenant of good faith and fair dealing.  Accordingly, Defendants' motion to dismiss all claims in the Amended Complaint shall be granted.

Dated:  December 2, 2015

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**